**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NICOLE MATTHEWS, | ) | CASE NO. 1:17-cv-01544 |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| *Acting Comm'r of Soc. Sec.*, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Nicole Matthews (hereinafter "Plaintiff"), challenges the final decision of

Defendant Nancy A. Berryhill, Acting Commissioner of Social Security (hereinafter

"Commissioner"), denying her applications for a Period of Disability ("POD"), Disability

Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI

of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. ("Act"). This court has

jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States

Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and

Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the

Commissioner's final decision be AFFIRMED.

# I. Procedural History

On July 29, 2013, Plaintiff filed her applications for POD, DIB, and SSI alleging a disability onset date of August 21, 2008.[1] (Transcript ("Tr.") 177-187). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 115-139). Plaintiff participated in the hearing on March 15, 2016, was represented by counsel, and testified. (Tr. 31-54). A vocational expert ("VE") also participated and testified. *Id*. On April 13, 2016, the ALJ found Plaintiff not disabled. (Tr. 10-24). On May 19, 2017, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-4). On July 24, 2017, Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 10 & 11).

Plaintiff asserts the following assignment of error: (1) the ALJ erred at Step Four of the sequential evaluation when the ALJ failed to properly consider the opinion of her treating physician. (R. 10).

# II. Evidence

## A. Relevant Medical Evidence[2]

### 1.  Treatment Records Prior to the Relevant Time Period

On August 22, 2008, John H. Wilber, M.D., an orthopedic surgeon, performed surgery on

---

[1]  Plaintiff's claim included a previously adjudicated period, and the ALJ dismissed any claim for disability prior to November 16, 2010, on the grounds of *res judicata*. (Tr. 10).

[2]  The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs *and* also deemed relevant by the court to the assignment of error raised. The court focuses primarily on the treatment of physician John Wilber, M.D., whose opinion Plaintiff claims the ALJ improperly rejected.

Plaintiff's right hip. (Tr. 778-785). During a follow up visit in November 2008, Plaintiff was "doing well," although she had mild tenderness. (Tr. 274). Dr. Wilber released Plaintiff to return to work on full duty status. (Tr. 274-275).

On March 12, 2009, Dr. Wilber noted Plaintiff still had some tenderness. (Tr. 263). He did not believe she had been "doing her stretching very well," and urged her to continue with her stretching exercises. *Id*. He also prescribed Percocet. *Id*.

On May 1, 2009, an MRI of the lumbar spine revealed right paracentral disc herniation at the L5-S1 level. (Tr. 260).

On February 15, 2010, Plaintiff reported that her back pain was worse with all household activities. (Tr. 316). On physical examination, Jason Eubanks, M.D., noted Plaintiff was obese, had no pain with internal or external rotation of the hips, a normal neurological exam, and 5/5 strength and negative straight leg raises. *Id*. Dr. Eubanks observed that an MRI showed "no significant disk herniation" and "looks better than her previous MRI." *Id*.

On April 22, 2010, Plaintiff returned to see Dr. Wilber with complaints of pain. (Tr. 335). Plaintiff was tender over her lateral proximal femur; her range of motion of the hip was not irritable, but was slightly restricted at the extremes. *Id*. Dr. Wilber suspected bursitis, and recommended possible hardware removal. *Id*.

On June 3, 2010, Dr. Wilber noted Plaintiff had been doing better except for a recent back spasm. (Tr. 312). Her "major concern" remained her back. *Id*.

Plaintiff eventually had the surgery to remove the hardware from her right hip. (Tr. 364, 816).

**2.  Treatment Records During the Relevant Time Period**

On March 7, 2011, Plaintiff underwent a nucleoplasty procedure on her spine at L5-S1 (Tr.

375). At her one-month follow-up, Plaintiff reported significantly diminished leg pain following the procedure, but she complained of significant low back pain that radiated into her right buttocks. *Id.*

On September 12, 2012, Plaintiff was seen by Nicholas Ahn, M.D., an orthopaedic spine specialist. (Tr. 364). Dr. Ahn noted "weakness and numbness in S1 type distribution and also in L5 type distribution particularly on the right side," markedly positive straight leg raise on the right, a markedly antalgic gait that clearly favored the right side, a positive shopping cart sign, an inability to walk on heels or toes, and cross straight leg raise was also markedly positive. (Tr. 365). He noted that a recent MRI scan revealed a large extruded disk herniation at the L5-S1 level on the right. *Id.*

On October 12, 2012, Dr. Ahn performed a lumbar decompression discectomy at L5-S1, and a few weeks later repaired a delayed dural leak. (Tr. 363, 369).

On December 12, 2012, Dr. Ahn stated that "[o]verall she is doing great. The burning radicular pain down her right lower extremity has resolved and she now has 5/5 strength with normal sensation. She does have some back pain, but this would be attributable to the fact that she had…undergone multiple surgeries within a relatively short period of time." (Tr. 363).

On June 5, 2013, Plaintiff reported low back pain of 7 out of 10. (Tr. 371). Her gait was grossly normal, her extremities had 5/5 strength throughout, but range of motion was limited due to pain. (Tr. 371-372). She was advised to use a TENS unit, quit smoking, continue her physical therapy, and schedule a facet block injection. (Tr. 372).

On July 31, 2013, Plaintiff reported pain of 8 out of 10 (Tr. 369). Upon examination, she had a slightly antalgic gait, 5/5 strength, no atrophy or involuntary movements, no sensory deficit, but limited range of motion in lumbar spine secondary to pain. (Tr. 370).

4

On October 4, 2013, Plaintiff told Dr. Wilber that she had been doing better recently. (Tr. 759). Upon examination, Plaintiff was overweight, in no acute distress, had a normal gait, tenderness of the spine over her lower lumbar incision, good range of motion, and a tender hip laterally but with good strength and range of motion. *Id*. Dr. Wilber recommended vocational rehabilitation, because he did not believe that Plaintiff could return to her prior job as a cashier due to the requirement of prolonged standing. *Id*.

On December 27, 2013, Plaintiff returned to Dr. Wilber with complaints of increasing back problems, chronic fatigue, and swelling in her legs. (Tr. 756). Conversely, she stated that her hip was "doing pretty well." *Id*. Upon examination, Plaintiff had some pitting edema of both legs, and a slow and somewhat shuffling gait. (Tr. 756-757). Dr. Wilber noted that Plaintiff had improved some with water therapy, but "appears to have other medical issues going on." (Tr. 757). He recommended that she see her medical doctor for further evaluation and continue exercising on her own. *Id*.

On March 21, 2014, Plaintiff reported that her hip pain was slowly getting worse, and causes difficulty sleeping at night. (Tr. 964). Physical examinations revealed tenderness over the groin and hip area, and range of motion was painful at the extremes. (Tr. 964, 966-67). Plaintiff's neurocirculatory status was intact (Tr. 964). X-rays revealed "mild early degenerative changes around her hip, but no significant change from prior x-rays." (Tr. 965, 971). Dr. Wilber recommended a hip injection. *Id*.

On April 29, 2014, Plaintiff was seen by Dr. Wilber following a hip injection, and she reported that "the sharp, jabbing pain in her groin is now gone but she still has pain from her back radiating down the back of her leg." (Tr. 962). Dr. Wilber noted that Plaintiff had a good response to the hip injection, although her back pain was the major component of her pain (Tr.

962-963). Dr. Wilber recommended weight reduction, encouraged her to participate in a water aerobics program, and agreed that she needed back injections for which Plaintiff was still trying to get approval. (Tr. 963).

On May 27, 2014, Plaintiff visited Dr. Wilber and reported that her request for facet injections had again been denied despite being recommended by Dr. Ahn as well as Dr. Khalil, her pain management doctor. (Tr. 960). Plaintiff's pain score was 3/10. *Id*.

On June 24, 2014, Plaintiff's pain score was 2/10. (Tr. 958). Her back injections were approved and she was scheduled to see Dr. Khalil in the next week or so. *Id*. Upon examination, Dr. Wilber noted over the lower part of her lumbar incision, pain with flexion, and that her neurocirculatory status remained intact. *Id*.

On July 22, 2014, Plaintiff rated her pain 5/10. (Tr. 955). She informed Dr. Wilber that she received six facet block injections from Dr. Khalil, which relieved the sharp stabling pain in her back. (Tr. 956). However, she continued to report "some mild right groin pain." *Id*. Upon examination, Plaintiff walked with a slow gait but did not appear to be antalgic. *Id*. Her back was tender over her lumbar incision and her hips bilaterally, but she had good range of motion. *Id*. Dr. Wilber advised continuing activity as tolerated and working on her weight, which he felt was "certainly a contributing factor." *Id*.

On October 17, 2014, Plaintiff rated her pain 8/10. (Tr. 953). She reported that Cymbalta "helps her a little bit." (Tr. 954). Dr. Wilber noted that Plaintiff's condition was essentially unchanged. *Id*. Dr. Wilber encouraged her to consider chronic pain management. *Id*.

On December 19, 2014, Plaintiff rated her pain 8/10. (Tr. 951). She had a slow and somewhat antalgic gait on the right. (Tr. 952).

On February 20, 2015, Plaintiff reported to Dr. Wilber that she had increased pain and

spasm over the winter months. (Tr. 949). Upon examination, she walked with an antalgic gait and had some tenderness over her right hip and lower lumbar spine. (Tr. 950).

On May 5, 2015, Plaintiff rated her pain 7/10. (Tr. 947). She reported that additional injections were never approved. *Id*. Dr. Wilber noted that Plaintiff was doing about the same (Tr. 948). He recommended continued exercise and follow up with pain management. (Tr. 948).

On February 12, 2016, Plaintiff returned to Dr. Wilber with complaints of increasing right hip pain. (Tr. 945). Dr. Wilber noted that Plaintiff had put on more weight and had been diagnosed with type 2 diabetes. *Id*. Upon examination, Plaintiff had a normal gait and her hip was tender both laterally and anteriorly. *Id*. She could flex to 90 degrees and extend fully, but had some pain with internal and external rotation. *Id*. Dr. Wilber stated that Plaintiff had some increased symptoms of early arthritis of the hip, and informed Plaintiff that her weight aggravated her hip pain. (Tr. 946).

### 3.    Medical Opinions Concerning Plaintiff's Functional Limitations

On September 24, 2013, state agency physician Maureen Gallagher, D.O., reviewed the record and opined that in an 8-hour workday Plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk about 6 hours; sit about 6 hours; could occasionally climb ramps/stairs, stoop, kneel, crouch, and crawl; could never climb ladders/ropes/scaffolds; and had no visual, manipulative, communicative, or environmental limitations. (Tr. 74-75).

On December 28, 2013, Dr. Wilber completed a checkbox medical source statement. (Tr. 940-945). He stated that Plaintiff's diagnoses were hip pain and chronic back pain. (Tr. 940). He did not identify any clinical findings, laboratory or test results that showed Plaintiff's medical impairments. *Id*. He identified Plaintiff's symptoms as weakness, pain, and fatigue, and opined that lower back and buttock pain were severe, while her right hip pain was moderate. *Id*. He

7

checked boxes indicating that Plaintiff had a positive straight leg raise on the right, tenderness, swelling, muscle weakness, weight change, and impaired sleep. (Tr. 941). He did not believe that emotional factors contribute to the severity of Plaintiff's symptoms or functional limitations. *Id*. Dr. Wilber opined that Plaintiff could walk one city block without rest and could stand for thirty minutes of time for less than two hours in an 8-hour workday. *Id*. He also indicated Plaintiff could sit for about one hour, one hour at a time. *Id*. He noted she required an at-will sit/stand/walk option. *Id*. Dr. Wilber stated that Plaintiff needed two unscheduled breaks during the workday for 5 to 10 minutes at a time. (Tr. 942). He stated that Plaintiff could occasionally lift/carry *less than* 10 pounds, rarely lift/carry 10 pounds, and never lift 20 pounds or more. *Id*. Plaintiff could rarely twist, stoop, bend, crouch, or climb stairs, and never climb ladders. *Id*. He indicated that Plaintiff would likely be off task 10 percent of the workday and would be absent from work about two days per month. (Tr. 943). Dr. Wilber believed Plaintiff was capable of moderate stress work. *Id*.

On April 1, 2014, state agency physician Esberdado Villanueva, M.D., reviewed the record and opined that in an 8-hour workday Plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk about 6 hours; sit about 6 hours; could occasionally climb ramps/stairs, stoop, kneel; crouch, and crawl; could never climb ladders/ropes/scaffolds; and had no visual, manipulative, communicative, or environmental limitations. (Tr. 91-92).

On March 21, 2016, Dr. Wilber completed a checklist physical residual functional capacity questionnaire. (Tr. 973-974). He opined that Plaintiff, in an 8-hour workday, could lift/carry 10 pounds occasionally and less than 10 pounds frequently; stand/walk for less than 2 hours; and sit for less than two hours. (Tr. 973). He asserted that Plaintiff required a sit/stand/walk. *Id*. He left blank the question asking him to "indicate what medical findings support the above-mentioned

restrictions." (Tr. 974). He did not assess any manipulative limitations. *Id*. Dr. Wilber indicated that Plaintiff would likely be absent from work two to three days a month due to her impairments.[3] *Id*.

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments)

---

[3] The court foregoes a summary of the hearing testimony, as Plaintiff has not challenged the ALJ's credibility determination or the ALJ's reliance on the VE's testimony.

that is expected to last for at least twelve months, and the impairment(s) meets a listed

impairment, the claimant is presumed to be disabled regardless of age, education or work

experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s)

does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§

404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's

impairment(s) does prevent her from doing past relevant work, if other work exists in the

national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§

404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security
   Act through December 31, 2013.

2. The claimant has not engaged in substantial gainful activity since August
   12, 2008, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et
   seq*.).

3. The claimant has the following severe impairments: herniated disc of the
   lumbosacral spine, status post remote right hip fracture, obesity,
   adjustment disorder with mixed anxiety and depressed mood, and pain
   disorder associated with psychological factors in general medical
   condition (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments
   that meets or medically equals the severity of one of the listed
   impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR
   404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that
   the claimant has the residual functional capacity (20 CFR 404.1545 and
   416.945) to perform light work as defined in 20 CFR 404.1567(b) and
   416.967(b), with the following additional limitations: only occasional
   balancing, stooping, kneeling, crouching, crawling, or climbing of ramps
   and stairs; no climbing of ladders, ropes, or scaffolds; no exposure to
   hazards, including heights, machinery, and commercial driving; and

mentally, she is limited to performing tasks in low stress environments (no fast pace, strict quotas, or frequent[] duty changes) involving only superficial interpersonal interactions (no arbitration, negotiation, or confrontation) (20 CFR 404.1569a and 416.969a).

6.  The claimant is capable of performing past relevant work as a hostess and cashier. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7.  Furthermore, while the claimant is capable of performing past relevant work, there are other jobs existing in the national economy that she is also able to perform. Therefore, the Administrative Law Judge makes the following alternative findings for step five of the sequential evaluation process.

8.  The claimant has not been under a disability, as defined in the Social Security Act, from August 12, 2008, through the date of this decision (20 CFR 404.1520(1),(g) and 416.920(1),(g)).

(Tr. 13-24).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial

evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).

Substantial evidence is more than a scintilla of evidence but less than a preponderance and is

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned

even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B.  Plaintiff's Assignment of Error**

In the first assignment of error, Plaintiff asserts that the ALJ erred at Step Four of the

sequential evaluation when he found her capable of performing her past relevant work.[4] (R. 10,

PageID# 1029-1034). Specifically, Plaintiff contends the ALJ's finding—that she could perform

a limited range of light work—was inconsistent with the opinion of a treating source, Dr. Wilber.

*Id*. Plaintiff points to two medical source statement forms completed by Dr. Wilber in December

of 2013 (Tr. 940-943, Exh. 12F) and March of 2016. (Tr. 973-974, Exh. 14F). Thus, the court

construes Plaintiff's sole assignment of error as arguing a violation of the treating physician rule.

The Commissioner does not challenge the assertion that Dr. Wilber was a treating source at the

time the questionnaires were completed. (R. 11). The Commissioner does, however, argue that

the ALJ properly considered Dr. Wilber's medical source statements and articulated good

reasons for not adopting his opinions. *Id.*

"Provided that they are based on sufficient medical data, 'the medical opinions and

diagnoses of treating physicians are generally accorded substantial deference, and if the opinions

are uncontradicted, complete deference.'" *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240

(6th Cir. 2002) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)).   In other words,

---

[4]  As noted above, the ALJ alternatively found Plaintiff capable of performing a significant
number of other jobs in the national economy. (Tr. 22-23).

"[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ does not give a treating source's opinion controlling weight, then the ALJ must give good reasons for doing so that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *See Wilson*, 378 F.3d at 544 (*quoting* Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5). The "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is "in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that [her] physician has deemed [her] disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson*, 378 F.3d at 544 (*quoting Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)); *see also Johnson v. Comm'r of Soc. Sec.*, 193 F. Supp. 3d 836, 846 (N.D. Ohio 2016) ("The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.") (Polster, J.)

It is well-established that administrative law judges may not make medical judgments. *See Meece v. Barnhart*, 192 Fed. App'x 456, 465 (6th Cir. 2006) ("But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.") (*quoting Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)). Although an ALJ may not substitute his or her opinions for that of a physician, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-

medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 157 (6th Cir. 2009). If fully explained with appropriate citations to the record, a good reason for discounting a treating physician's opinion is a finding that it is "unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence." *Conner v. Comm'r of Soc. Sec.*, 658 Fed. App'x 248, 253-254 (6th Cir. 2016) (*citing Morr v. Comm'r of Soc. Sec.*, 616 Fed. App'x 210, 211 (6th Cir. 2015)); *see also Keeler v. Comm'r of Soc. Sec.*, 511 Fed. App'x 472, 473 (6th Cir. 2013) (holding that an ALJ properly discounted the subjective evidence contained in a treating physician's opinion because it too heavily relied on the patient's complaints).

The ALJ addressed Dr. Wilber's opinions as follows:

> The undersigned rejects the "checklist" assessment of Dr. John Wilbur, M.D., dated December 28, 2013, as insufficiently supported by the objective findings, which failed to show the severity found by Dr. Wilbur's assessment (Ex. 12F, 14F). Dr. Wilber opined that the claimant was limited to sitting for only 2 hours in an eight-hour day and standing or walking for less than two hours in an eight-hour day (Ex. 12F, 14F). He further limited her to lifting and carrying to 10 pounds rarely and less than ten pounds occasionally (Ex. 12F, 14F). He also opined that she would need to take five to ten minute, unscheduled breaks, twice daily and would be off-task approximately ten percent of the day (Ex. 12F, 14F). This opinion is inconsistent with Dr. Wilbur's examinations findings [sic] of the claimant (Ex. 8F). In particular, he examined the claimant on December 27, 2013, the day before completing this Medical Source Statement form, noting that while her gait was slow and somewhat shuffling, she was neuro-surgically intact. On October 4, 2014, [sic[5]] less than three months earlier, his examination of the claimant noted that she had normal gait and had "been doing better" recently (Ex. 8F, 9). While her spine was tender over the lumbar incision, he found she had good range of motion and strength (Ex. 8F, 8). Although Dr. Wilber treated her for her hip problem, completing her hip surgeries in 2008 and 2009, most of the claimant's complaints in her visits with Dr. Wilber during the unadjudicated period related to her back, for which he has not treated the claimant. Dr. Wilber's opined limitations are inconsistent with his treatment of the claimant and his clinical findings. As such, they are rejected as insufficiently supported by the

_____

5 The record cited is actually dated October 4, 2013. (Tr. 759).

objective evidence.

(Tr. 19).

Plaintiff takes issue with the ALJ's decision not to accept Dr. Wilber's opinions for three reasons. First, she argues that Dr. Wilber's opinions are indeed supported by the objective evidence, an argument addressed below, and second she points to her own pain complaints. (R. 10, PageID# 1032). The court rejects the latter line of argument as it is tantamount to asking this court to reweigh the evidence of record and engage in its own evaluation of Plaintiff's credibility. The court declines to do so. First and foremost, the RFC and corresponding hypothetical need only incorporate limitations the ALJ accepted as credible and *not* the unsubstantiated allegations by claimant. The ALJ specifically found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (Tr. 17). To the extent Plaintiff would take issue with the ALJ's credibility determination, she has not presented the court with a legal argument challenging the ALJ's credibility determination, and, therefore, has waived such argument. *See, e.g., Siple-Niehaus v. Comm'r of Soc. Sec.*, No. 5:15cv01167, 2016 WL 2868735, at n. 12 (N.D. Ohio, May 17, 2016) (finding that plaintiff "has not challenged the ALJ's credibility determination" and, therefore, "arguments pertaining to the ALJ's assessment of her credibility have been waived.") (Burke, M.J.); *cf. Williams v. Comm'r of Soc. Sec.*, No. 2:14cv2655, 2016 WL 2733518, at *2 (S.D. Ohio May 10, 2016) (declining to consider Plaintiff's argument challenging the ALJ's credibility determination, because it was not raised before the Magistrate Judge in the statement of errors). In addition, to the extent Plaintiff invites the court to find her complaints of pain fully credible and justifying greater restrictions than those imposed by the ALJ, the court's role in a social security appeal is not to conduct a *de novo* review of the evidence, to make credibility

15

determinations, or to reweigh the evidence.[6] *Brainard*, 889 F.2d at 681.

Second, Plaintiff contends that the ALJ's analysis is perfunctory and conclusory, and fails to satisfy the good reason requirement imposed by the treating physician rule. (R. 10, PageID# 1032-1033). While there are countless cases where an ALJ's unexplained, conclusory language with respect to the weight ascribed to a treating physician's opinion has furnished the basis for a remand, the court disagrees that this is such a case. The ALJ provided several reasons for finding Dr. Wilber's opinions unsupported. He found that the opinions in question were simply "checklist" assessments.[7] (Tr. 19). The ALJ further found that the severity of the assessments were not supported by objective evidence or by Dr. Wilber's examination findings. *Id*. The ALJ's analysis does not end there. Instead, the ALJ specifically points to Dr. Wilber's treatment notes from the day before the December 2013 opinion was completed, noting that, while her gait

---

[6] Plaintiff argues that Dr. Wilber's opinion should have been credited because "[i]t is quite reasonable to conclude that [her medical] history could certainly cause the pain and limitation [she] alleges." (R. 10, PageID# 1033). However, courts have found that a physician's opinion, "premised to a large extent upon the claimant's own accounts of [her] symptoms and limitations may be disregarded where those complaints have been properly discounted." *Reinertson v. Barnhart*, 127 Fed. App'x 285, 290 (9th Cir. 2005) (internal quotation marks omitted) (*citing Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 602 (9th Cir. 1999)); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 391 (6th Cir. 2004) (finding that ALJ did not err by disregarding the opinion of a treating physician where the limitation in question appeared to be based not upon his own medical conclusion, but upon the conclusion of a different doctor and the claimant's self-assessment); *Tate v. Comm'r of Soc. Sec.*, 467 Fed. App'x 431, 433 (6th Cir. 2012) (finding no error where the ALJ discounted a treating doctor's opinion because there were substantial gaps in treatment and where the doctor's assessment appeared to be based on claimant's subjective complaints without sufficient support from objective clinical or neurological findings); *see also Poe v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 149, 156 (6th Cir. 2009) (finding treating physician's opinion was not entitled to deference where it was based on claimant's subjective complaints); *accord Rogers v. Astrue*, 2012 WL 639473, at *4 ("Simply recording Plaintiff's subjective complaints is not objective medical data....")

[7] The court addresses this reason in its alternative recommendation below.

was slow and shuffling, she was neurosurgically intact.[8] (Tr. 19, *citing* 756). The ALJ also expressly cites an October treatment note from three months earlier wherein Dr. Wilber found Plaintiff to be "doing better" with "normal gait," and "good range of motion and strength." (Tr. 19, *citing* Tr. 759). The ALJ was not unreasonable in finding a questionable discrepancy between the severely restrictive standing/limitations assessed and the much less drastic examination findings.

Furthermore, Plaintiff has not demonstrated the ALJ's finding—that objective evidence does not support the restrictions assessed by Dr. Wilber—to be unsupported by the record. Plaintiff points to two hip surgeries, back surgery in 2012, and an x-ray that showed osteoarthritic spurring as evidence that the ALJ's conclusion is unsupported. (R. 10, PageID# 1032). However, the two hip surgeries performed by Dr. Wilber occurred *prior* to the alleged onset date, and he released Plaintiff to "full duty status" after those surgeries in November of 2008. (Tr. 275). With respect to the hip x-ray upon which Plaintiff appears to rely, its significance is diminished by Dr. Wilber's own characterization of the results as indicative of only "mild early degenerative changes" with "no significant change from prior x-rays." (Tr. 965). Thus, neither Plaintiff's hip surgeries prior to the relevant time period nor her x-rays render the ALJ's determination—that objective evidence does not support Dr. Wilber's assessment— unreasonable or unsupportable. Moreover, even if there is some evidence of record that supports a treating source's conclusion, that alone does not render the ALJ's decision to reject a treating

---

[8] It also bears noting that Dr. Wilber, at the same December 27, 2013 visit, observed that Plaintiff's complaints of chronic fatigue and swelling in the legs was a problem that Plaintiff never had before. (Tr. 756). Thus, to the extent Plaintiff's limitations, as assessed in the December 28, 2013 opinion, were based on problems that had just surfaced, it is doubtful that the twelve month durational requirement would be satisfied.

opinion untenable. *See, e.g., Shepard v. Comm'r of Soc. Sec.*, 705 Fed. App'x 435, 440 (6th Cir. 2017.) "The fact that there is some evidence in the medical records to support [a treating source's] conclusion is not enough to overturn the agency. 'The fact that a record may also possess substantial evidence to support a different conclusion than that reached by the ALJ or that a reviewing judge might have decided the case differently is irrelevant.'" *Id.* (citations omitted).

The ALJ also expressly notes that most of Plaintiff's complaints in the relevant time period stem from back pain, for which Dr. Wilber did not actually treat her. (Tr. 19). This assertion is supported by the record and Dr. Wilber's own treatment notes. Several treatment notes from Dr. Wilber, including notes from April 29, 2014, indicate that Plaintiff's back pain was the "major part" of her pain or her "major concern." (Tr. 312, 962). A month later. Dr. Wilber's treatment notes reveal that Dr. Khalil was Plaintiff's pain management doctor and that Dr. Ahn was Plaintiff's primary surgeon for her back injury. (Tr. 960). The court sees no issue with the ALJ ascribing less weight to the opinion of a physician who treated Plaintiff primarily for her hip pain, when Plaintiff's primary pain issue revolved around her back pain that was treated by other sources.

Third, Plaintiff argues that the ALJ, while addressing the December 2013 opinion of Dr. Wilber, wholly failed to address the March 2016 opinion. (R. 10, PageID# 1032). The court finds no merit in this argument. Although the above quoted paragraph wherein the ALJ discusses the weight to be ascribed to Dr. Wilber's opinion expressly mentions the December 2013 opinion, the same paragraph cites to both Exhibits 12F and 14F three times. (Tr. 19). Exhibit 14F contains the form Dr. Wilber completed in March of 2016. (Tr. 973-974). It is even more perfunctory than the December 2013 assessment, and Plaintiff identifies no material differences between the two

opinions. Plaintiff cites no authority suggesting an ALJ must consider multiple opinions from the same physician separately where those opinions are largely consistent. Because the ALJ set forth sufficiently good reasons for rejecting the December 2013 opinion, the court declines to impose a requirement that the ALJ repeat the same analysis with respect to the second opinion where the reasons given for rejection are equally applicable to the second opinion. Therefore, the court finds the sole assignment of error not well taken.

In the alternative, assuming *arguendo* that the ALJ failed to set forth good reasons for rejecting Dr. Wilber's December 2013 and March 2016 opinions, the court must consider whether the ALJ's failure to do so was harmless. *See, e.g., Wilson v. Comm'r of Soc. Sec.*, 378 F.3d at 547 ("if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it, a failure to observe § 1527(d)(2) may not warrant reversal.") (*citing NLRB v. Wyman-Gordon*, 394 U.S. 759, 766 n.6, 22 L. Ed. 2d 709, 89 S. Ct. 1426 (1969) (plurality opinion) (where "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game")).

In the case at bar, the ALJ expressly notes that Dr. Wilber's opinion consisted of a "checklist" assessment that was insufficiently supported by objective findings. (Tr. 19). Even if the court construes the ALJ's decision as merely describing the format of the opinions rather than a basis for rejection, recent decisions from the Sixth Circuit Court of Appeals suggest that the checkbox format of a treating source's opinion is relevant even where the ALJ did not specifically call attention to it in his or her decision. In *Ellars v. Commissioner of Social Security*, the Sixth Circuit agreed with "the district court that the [ALJ] gave 'good reasons' for not affording [a treating physician's] opinion controlling weight." 647 Fed. App'x 563, 568 (6th Cir. 2016). The *Ellars* court explained as follows:

19

> Dr. Schall's evaluation consisted of a two-page form on which he entered check marks in the blanks regarding plaintiff's physical limitations…. Many courts have cast doubt on the usefulness of these forms and agree that administrative law judges may properly give little weight to a treating physician's "check-off form" of functional limitations that "did not cite clinical test results, observations, or other objective findings...." …. These cases recognize that the administrative law judge properly gave a check-box form little weight where the physician provided no explanation for the restrictions entered on the form and cited no supporting objective medical evidence. In the "REMARKS" section of the Physical Capacity Evaluation, Dr. Schall simply noted plaintiff's impairments consisted of severe peripheral vascular disease, coronary artery disease, COPD, depression and anxiety. These remarks were not sufficient to explain Dr. Schall's findings.

*Id*. at 566-567 (internal citations omitted).[9]  Nevertheless, the Sixth Circuit affirmed the district court. Another Sixth Circuit decision went even further and determined that a check-box opinion, unaccompanied by any explanation, is "'weak evidence at best' and meets our patently deficient standard." *Hernandez v. Comm'r of Soc. Sec.*, 644 Fed. App'x 468, 475 (6th Cir. 2016) (*citing Friend v. Comm'r of Soc. Sec.*, 375 Fed. App'x 543, 551 (6th Cir. 2010)).[10]  The *Hernandez* decision explained that "[e]ven if the ALJ erred in failing to give good reasons for not abiding by the treating physician rule, it was harmless error" where the opinion in question was an unsupported check-box opinion. *Id*.; *accord Shepard v. Comm'r of Soc. Sec.*, 705 Fed. App'x 435, 441 (6th Cir. 2017) (finding that a doctor's "conclusory opinion, which provided no supporting findings or records and consisted largely of one word answers, circles, and check-

---

[9]  Unlike in the present case, the ALJ's analysis in *Ellars* did not actually identify the checkbox format of the opinion in question as a reason for discounting it. *Ellars v. Comm'r of Soc. Sec.*, No. 2:14cv2050, 2015 WL 3537442, at *3 (S.D. Ohio Jun. 4, 2015) (the ALJ only observed that the medical opinion was "conclusory," and provided "very little explanation"), *report and recommendation adopted sub nom. Ellars v. Colvin*, 2015 WL 4538392 (S.D. Ohio Jul. 27, 2015).

[10]  The *Friend* decision identified three instances where a violation of the treating physician rule would be harmless error. 375 Fed. App'x at 551. The first instance, found applicable by the *Hernandez* court, was where "a treating source's opinion is so *patently deficient* that the Commissioner could not possibly credit it." *Id*. (emphasis added).

marks" was suspect under *Hernandez*); *Toll v. Comm'r of Soc. Sec.*, No. 1:16cv705, 2017 WL 1017821, at *4 (W.D. Mich. Mar. 16, 2017) (finding that "even if the ALJ failed to provide good reasons" for assigning little weight to a treating source's opinion, such error was harmless where the opinion consisted of a check-box worksheet lacking any explanation beyond a diagnosis); *Denham v. Comm'r of Soc. Sec.*, No. 2:15cv2425, 2016 WL 4500713, at *3 (S.D. Ohio Aug. 29, 2016) ("The magistrate judge also correctly found that any error in the ALJ's consideration of Lewis's evaluation was harmless because the check-box form was so patently deficient that the Commissioner could not possibly credit it," and observing that "[t]he Sixth Circuit has cast doubt on the usefulness of check-box forms where the physician fails to give any explanation for his findings."); *see also Jackson v. Comm'r of Soc. Sec.*, No. 1:16-CV-14404, 2017 WL 4699721, at *7 (E.D. Mich. Oct. 19, 2017) (finding a medical source statement in the "check-box format" was "an impotent addition to the record with little to no persuasive value," and that it was "immaterial" if there was certain evidence in the record consistent with the opinion "because the ALJ provided 'good reasons' for discounting his opinion and this Court may not reweigh the evidence"); *but see Shields v. Comm'r of Soc. Sec.*, No. 17-6091, 2018 WL 2193136, at *10 (6th Cir. May 14, 2018) (finding treating source's checklist opinion "was not patently deficient as Shields's medical records include objective findings as well as opinions from other medical providers that do not contradict his assessment").

Dr. Wilber's two checklist opinions are substantially similar to the unexplained and unsupported checklist/checkbox opinions disfavored in the above cited cases. The March 2016 form completed by Dr. Wilber consists solely of circled limitations with no explanation and not even a diagnosis. (Tr. 973-974). Dr. Wilber left blank two portions of the form that asked him to indicate the medical findings that support the restrictions assessed. (Tr. 974). The December

2013 form also consists of merely circled limitations. (Tr. 940-943) Therein, Dr. Wilber does identify hip pain and back pain as the source of Plaintiff's alleged limitations, but he omits any explanation when asked to identify the clinical findings that show Plaintiff's medical impairments. (Tr. 940). He did check a few boxes indicating that Plaintiff had a positive straight leg raise at an unspecified degree on the right, abnormal gait,[11] swelling, and tenderness, weight change, and impaired sleep. (Tr. 941). Again, however, Dr. Wilber does not explain how these checked symptoms support the significant standing/walking and lifting restrictions assessed. *Id.* Based on the Sixth Circuit's decision in *Hernandez* and the other above cited decisions, the court finds that Dr. Wilber's unexplained opinions were similarly "patently deficient." Therefore, to the extent the ALJ did not sufficiently explain his reasons for ascribing little weight to Dr. Wilber's opinions, any such shortcoming was harmless error.

### IV. Conclusion

For the foregoing reasons, it is recommended that the Commissioner's final decision be AFFIRMED.

s/ *David A. Ruiz*

David A. Ruiz
United States Magistrate Judge

Date: June 19, 2018

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order.   *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**

---

[11] As mentioned above, the ALJ pointed out that an abnormal or antalgic gait were not always present during treatment visits. (Tr. 19).